Good morning, Your Honors. May it please the Court, my name is Wesley Smith, Counsel for the Appellants. I'd like to reserve three minutes for rebuttal. There are three indisputable key points that demonstrate why the decision of the District Court must be reversed. First, this is not a bankruptcy case. Second, under ERISA, the term fiduciary is defined broadly. And third, under ERISA, the documents that govern an employee benefit plan must be enforced. I'll address each of these in turn. First, this is not a bankruptcy case. The District Court below relied wholly upon the Ninth Circuit's 2015 decision in Boss v. Board of Trustees. Are you familiar with the order issued in Boss in 2016 that addressed, it's a published order that addressed the attorney's fees issue there? I am aware of it. And it seemed in there that the panel held that the holding in the Boss one was that, well, it applied in the ERISA context, the fiduciary ruling, so why wouldn't we be bound by that precedent? Or is that precedent in your mind that is binding on this Court? I don't think that's precedent that's binding on this Court. I believe that that statement was simply trying to summarize what had happened previously in the case. But if the panel that decided that previous case says that's what they did in the previous case, then isn't that pretty good authority that that's what they did? You know, they may have believed that that's what they were doing, but when you actually look at the actual text of the merits of Boss and what they were deciding, it was clear that they were deciding whether or not a debtor was subject to discharge. And their entire analysis comes back to that. When you look at the cases that they relied upon for their decision, those were bankruptcy cases. The In re Abucci case from the Sixth Circuit and In re Luna from the Tenth Circuit, both bankruptcy cases. And they were always coming back to this question of what is a fiduciary under the bankruptcy code? So why in Boss then at Section 2A did they have all this discussion of ERISA? Because what that comes back to is the Ninth Circuit previously held in In re Hemeter that if you are a ERISA fiduciary, then you're probably a fiduciary under the bankruptcy code. However, when we actually look at that, I don't think that that's essential to the holding. I think that what they're trying to do first, because you have to be a fiduciary under A4 of the discharge exception, first they have to determine, okay, well, how do we get there? How do we make this person a fiduciary? Let me stop before you go too far, because I don't think it's our case law that the binding reach of precedent is limited to those pieces that are, quote, essential to the holding, close quote. The Boss panel spoke of ERISA. Now, you may say that it was a bankruptcy case, so we should disregard all that, but I don't think that's our prerogative. Can you tell me why it's our prerogative? Why we aren't bound by what the panel said? Well, I'll tell you there's two reasons why this court should not hold the same way as Boss. We not should. Can you point to case law from our court that says we're not bound? Because the case law that I know of from our court says that we are, even if it's not, quote, essential to the holding, close quote. Absolutely. Obviously, this court is going to be bound by its prior decisions. However, if that prior decision was within a different context, where this case is But we have, I mean, the problem is we have in our court, and I don't think every circuit has this rule, but we have a rule that says we're bound by well-reasoned dicta. And I think saying that it's not necessarily the holding doesn't get us out of that, because it seems like Boss talked a lot about ERISA, and it seems like it's reasoned. So, I mean, maybe you can tell us it's not well-reasoned, but that's a tough, maybe, I mean, maybe that's where you were going. But I think we have to be within the framework that we're going to be bound if this is well-reasoned dicta. Certainly. Let me tell you why the decision of the district court is inconsistent with prior precedence, both from the Ninth Circuit and from the Supreme Court. My second and third points were, the second point was, under ERISA, in a purely ERISA context, the term fiduciary is to be defined broadly. But so does that mean Boss is wrong? Are you telling us, I mean, maybe your argument is we should take Boss, this issue on Bonk, because Boss was wrong. Well, wasn't there a section in Boss that found, that recognized, well, let me find the case. But there was a discussion in the first, in the Boss decision, not the subsequent order, that recognized that there could be a way to find the fiduciary in the ERISA context that would still make it dischargeable in bankruptcy. There were three different analysis in the Boss case. Yes, and that's right. All of those bankruptcy cases, Boss and the other cases, they start with determining whether or not they're a fiduciary. But then they take it another step and say, okay, even if they are a fiduciary, has a defalcation occurred? And that's a further step in the analysis that certainly wouldn't be applicable here. And so what Boss talked about is, it actually said, okay, well, we're going to take it and we're going to say, if they are a fiduciary in ERISA, how would we analyze that and what would that make, how would we take that the step further? And it goes to the whole idea of what is a plan asset? Do they have control over it? These kinds of things. And so the Boss goes through and has that three-part analysis. This case, obviously, is not going to have that same effect. Certainly, when Congress enacted the bankruptcy code, it did not intend to have an effect on pure ERISA collection actions. Now, if those end up in a bankruptcy case, then certainly that's going to have an effect. But until that happens, until an individual actually files a petition for bankruptcy, they don't get the protections of the bankruptcy code. And so under ERISA, we have this broad definition of fiduciary. Well, have you gone after, has accuracy filed for bankruptcy? Accuracy glass is in bankruptcy, yes. Okay, have you gone after accuracy glass? To the ends of the earth, Your Honor. Okay. So that leads to a somewhat different question, but it's been weighing on me, so I'll go ahead and pose it. What gives the plans the authority to assign duties of any kind, especially fiduciary duties, to individuals who haven't themselves voluntarily undertaken those duties? I mean, your brief talks about imposing. The plans have done things to impose duties on others. I don't think you can impose. I mean, I can't go to somebody who owes me money and says, I'm imposing this duty on you. It's my money even before you've paid it to me, even before it's due, so you've got a fiduciary duty to me. I can't do that. So how does the plan assign fiduciary duties to these individuals? The way that it works is, so in this case, accuracy glass had, number one, they signed a master labor agreement. Once you enter into that master labor agreement, by its nature, if it has a contribution obligation to trust funds, those trust funds don't exist in a vacuum. By the nature of ERISA and by its mandates, they are subject to written doctrines. And accuracy glass may have exposed itself and imposed upon itself fiduciary duties, but accuracy is not in front of us. Certainly. So what about the individuals? What did they do to take on these fiduciary duties? I'll refer to, there's a, if you look at the Temecula Mechanical case in the Central District of California, they go through this whole analysis of, is it really, it's almost a fairness analysis. Is it fair to impose these duties on an individual when they were acting in the capacity of the employer, not for themselves personally? And what they do is they actually quote from a district in New York case, it's called the Cattucci case, and they address that specifically. I'm less interested in the court saying it than in the logic behind it. I do not understand what gives somebody else the power to reach out and impose a fiduciary duty on someone who hasn't undertaken it. So that's what I'm waiting to find out. How is it that Mr. Marshall and Mr. Lameck can be assigned duties by whatever it was the funds did? Your Honor, the answer to that question is probably best demonstrated by when we look at the way that these trust agreements are enacted and how they are, how they adopt these provisions. Are those two individuals parties to those trust agreements? By nature of their entering into the master labor agreement, yes, they are. They didn't, it's their employer who entered in the master labor agreement. They didn't sign on to the master labor agreement themselves, did they? Well, and what I was going to say is that we actually... Answer that question yes or no. You can go on and give me the explanation, but it's my understanding they are not individual signatories to that agreement. No, they are not individual signatories to that agreement, Your Honor. So what is it they are individual signatories to that imposes fiduciary obligations on them? What it is is, what I was going to point to is that Mr. Lameck actually was a trustee on one of these funds. At the time when they first adopted this policy in 2004, it's the apprenticeship fund, and you can find this on pages 256 to 257 of the exhibits of record that we provided. They adopted a very explicit amendment that said that unpaid contributions are planned assets, and the employer representative who is responsible for making those contributions, whoever the employer puts in charge of that, is deemed a fiduciary of those contributions, a trustee. Well, can I make an agreement with you that deems Judge Friedland a fiduciary? No. Mr. Lameck, if he is in fact a trustee, he may be able to bind himself if he's an employee representative, but I don't understand how he or his employer has the authority to bind another individual as a fiduciary. I mean, you and I can make all the agreements we want, but that doesn't mean that she's liable for them. You and I can't because we are not in a labor agreement. We're not in that kind of relationship. The way that ERISA functions is in order to protect employee benefit plans and the benefits that are promised under those plans. And so they've given broad protections and broad abilities to plan fiduciaries to be able to plan, to be able so that they can have properly funded plans to be able to provide those benefits. Certainly, as we've seen over the last several years where we have pension funds failing and health and welfare plans failing, that's a major concern. You've still got a problem as to what's made Judge Friedland liable, or let's use the real names. Perhaps the plan for which Mr. Lameck was himself a trustee, that may be a different situation. And I confess going through this, I've struggled trying to figure out who's a trustee of what, and I don't have a handle on that, and I'll be asking your colleague about that. But other than that situation, I haven't figured out what it is that makes Mr. Lameck and Mr. Marshall personally liable. What gives the plan the authority to impose a liability on somebody else who is not himself a signatory to any of these plans? The plan has the authority under ERISA. It's the statute. Point to me a statute that says that you and I can make a deal, or in this case, the plan can make a deal that imposes liability on somebody who's not a party to it. ERISA itself states in 1102 and 1104, it states in the 1002 in the definition section, it says that a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan, or exercises any authority or control respecting management or disposition of its assets. Well, that's somebody who's part of the plan management. Presumably his obligation to the plan is preexisting. Your Honor, it doesn't say that that's who it is. What it says is that anyone who has control over plan assets, plan assets is not defined in ERISA. That's left to the governing document. The Supreme Court has stated we enforce those governing documents. It leaves it to the governing documents to state what is a plan asset. The trust agreements clearly state contributions that are due but not yet paid and are in control of this employer, you have a fiduciary obligation to remit those contributions. That's where it's stated, and that's how it happens. But the fiduciary duty, if I'm understanding your argument correctly, would come from having control over the plan's assets, and that gets us back to BOSS, right? Are these yet the plan's assets? And so we're back around, I think. Isn't that right? You are right. And the difference in BOSS, if you look closely as to what those agreements state, I'd say that this case is even more, it's very different from BOSS because those agreements were very, very vague. They talked about contributions to be made, and that's as far as it went, where in this case we have specific documents. But doesn't BOSS talk about it as a general rule about funds that are not yet paid? So I just am really having trouble figuring out how to read BOSS, especially in light of the BOSS II order, as not saying something about there not being a trust or any duty in funds that aren't yet paid. Your Honor, the Eleventh Circuit struggled with this same issue. It had a prior case where it was the Powhatan fuel case, and it had actually said, just like Klein says, unpaid contributions are not plan assets. And a later case in the ITP Pension Fund v. Hall case, it stated that they talked about how that was the general rule that was stated, but then they create this exception, and that's where the plan document, where it defines that. And the problem I'm having is even if I would be inclined to agree with you, BOSS says, the Eleventh Circuit said this stuff in ITPE. Instead of agreeing with them, we agree with these other courts. So I don't know how we can agree with you unless we take this on bonk, which, again, I mean, I think I asked this earlier. Maybe that is what you want us to do. I certainly think that that may be appropriate. It's losing. For right now, the difference is that the reason why the Ninth Circuit disagreed with the Eleventh Circuit and went with those other cases is because the Eleventh Circuit case was not a bankruptcy case. The Sixth and Tenth Circuits that it followed were bankruptcy cases. And so it made it appropriate because BOSS itself was a bankruptcy case. So then why in the order do they say we made this ERISA holding? Honestly, you know, when I read BOSS, I agree it's entirely confusing. I think that it could be more careful in its wording and the way that they describe it because I think it confuses the issue more than helps it. And certainly I think that the district court was confused by those same things. We have, since BOSS became law, there have been some district courts that have analyzed it and tried to implement it. There's been two cases that have said, okay, well, BOSS says what it says, and sorry, there's no exception to Klein in this circuit. There's been other cases that have said, well, BOSS appears to be a bankruptcy case, and so we're going to take at its word that it's limited to what it was decided in. And then they found that there is an exception to Klein. And do you think that the Klein exception, which is from around 2000, is consistent with the rulings by the Supreme Court later on that says the plan documents, I think it's Heinsfeld, the plan documents must be given controlling effect. To have an exception that doesn't follow that precedent at this point in time, how do you harmonize that? Well, certainly when Klein was decided in 2000, there's not really anything in that case to suggest that they even looked at the plan documents. And so what the cases that have talked about since then that apply the exception, they go to that exact point that the Supreme Court has said, look. And even in 2013 in the U.S. Airways v. McCutcheon case, the Supreme Court talked about how the decision in an ERISA case is prescribed by what's written in that plan. We have to enforce that plan as it's written. I understand that there may be some heartburn about that and how we don't, it may seem unfair to impose these liabilities on individuals who are merely trying to do their job. Is there any case where the Supreme Court or any other circuit court said we have to enforce the plan as written and that includes enforcing on somebody who is not a party to the plan? Absolutely. Okay, what case would that be? Every single one of the cases that we cited adopting the exception to Klein, that's what they say. Because they all struggle with the same issue. It doesn't seem fair to impose this kind of liability. But they are mandated by the Supreme Court to adopt and apply these plan provisions as they're written. If they say that they're unpaid contributions, then we're going to keep that as part of the plan assets. Well, if you took that principle, the plan could say, and we're going to make the bank where the employer has its accounts itself liable for anything that's not paid. And so to enforce the plan as written, that would mean any bank that happens to have a deposit from Accuracy Glass suddenly becomes liable itself. Is that what you think the case law calls for? I don't think that's what the case law calls for because a bank, while it may have custody of monies belonging to an employer, it doesn't necessarily have control of those monies. No, I just told you. Suppose the plan says we're going to say plan assets and have the monies in their account. And so we think that the depository should also be responsible to us to make sure the money isn't paid to anybody else and gets paid to us first. I mean, if a plan did that, is that what ERISA would contemplate and what the cases that you're citing would authorize? The plan is enforced to the extent that it's consistent with ERISA. And so you have to have control over the plan asset in order to have a breach of fiduciary duty. If the bank did not have control over that plan asset, then it wouldn't matter what the trust document said. It couldn't impose that liability. Here, they're saying that the employer, to the extent it does have control, then it's going to have liability. The trust fund that brings that kind of case still has to prove not only that it was dealing with a plan asset, but that the employer representative that they're trying to sue and hold liable is the one that actually had that control. And so I can't just sue anybody at the employer saying, well, Joe worked there and so he's liable. No, it has to actually be an employer representative who is making decisions about when and how to send those contributions and turn them over to the trust fund. We've taken you over your time. I'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Mark Sarnosky, and I am the attorney representing Michael Namek and Kelly Marshall in connection with this matter. Judge Clifton, earlier you had, in one of the early arguments, had made a comment about people being belt and suspenders lawyers. I hadn't heard that expression before. I think of myself as a lunch pail litigator. And as a lunch pail litigator, it's very important to me that I can rely upon the words that people like you who wear the robes and make decisions, what you say. And when you say something, I need to be able to rely on the fact that you mean it. And when you look at Boss, regardless of the dance that the appellants have to make in this case, it is very clear what the panel in Boss said, and I think what they meant. The very first sentence of the case says, we must decide whether an employer's contractual requirement to contribute to an employee benefits trust fund makes it a fiduciary of unpaid contributions. That's what the court said it was deciding and what it had to decide, and it went forward and did an analysis to address that very question. But they could have meant that within bankruptcy. I mean, that's a relevant bankruptcy question, too. And there is case law saying the risks of fiduciary duties are broader than bankruptcy. So I'm not sure that first statement really gets you over the finish line. No, it does not. It gets you to the second statement that I think does, which is on the second page of the opinion. They specifically said, if an individual is a fiduciary for purposes of the Employee Retirement Income Security Act of 1974, the individual is also treated as a fiduciary for purposes of Section 523A4. And they then went through, as you noted in your questioning, an analysis of ERISA. What about the page of the decision, page 1012, where they say, well, however, the event that created the debt, the nonpayment of the funds, was the same event that created the fiduciary status. So they recognized that there could be a fiduciary status, but say, nonetheless, dischargeable because that event was the same as the event, the nonpayment created the status. So why doesn't that mean one way to read this is to say that it doesn't reach the question that we are confronting? Well, I think that's a reading that you could make of the case. I absolutely believe that you could, if you were trying to thread a needle and make and distinguish the present case from this case. That's where you have to thread it. I appreciate your candor, because I've struggled with trying to parse out this decision, and I appreciate that. I think where Mr. Smith left off, though, raises an interesting question that deal or that directly applies here. In answer, again, I think it was to Judge Clifton's question about imposing obligations on a bank. Mr. Smith has argued back and says, well, you know, that won't happen, because the bank doesn't exercise control over the asset. It just is the holder of the depository. Well, that brings us right back to BOSS again. BOSS's rationale for not finding the officers and directors of the employer, the rationale was because these officers and directors do not control the asset, which is the unpaid contribution. And they went through an interesting analysis to try and calculate and define exactly what kind of an asset is this thing. I mean, it's not money that has been received by the employer. Money received by the employer in an employee, for instance, in an employee contribution to the plan. And they have withheld money so you can segregate the money that and identify the money that the employee paid. So now the employer has control over that. And so that has been viewed as a plan asset. And, you know, who did that? It was in the Code of Federal Regulations. It's Congress and the regulators who put that in a statute or a regulation to say this is a plan asset and it's a plan asset because the money can be segregated. Well, in Accuracy Glass's case, there is no money. I mean, that's the whole reason that we had the litigation to begin with, why Accuracy Glass ended up going into bankruptcy. Now they couldn't pay their bills anymore. Well, I think the argument being made is that your clients had an obligation or were or should have been motivated when they were in a position to sort out what assets Accuracy Glass had before they got to bankruptcy and maybe before they got to insolvency that they should be motivated to push payments to these funds to the top of the list. Presumably Accuracy Glass paid some things. Why weren't the funds paid? There's no record that there was any decisions made. In our case, there's no allegations that there was misprioritization. There's no allegations that the management paid themselves at the expense of any contributions. In fact, they did make partial contributions throughout the entire history of this as they had money available when their customers paid them. So they put a highest priority on health and welfare benefits, for instance. And they made certain that the health and welfare benefits portion of the trust did get paid as quickly as possible. Some of the other ones, they just didn't have the money. You're basically arguing your clients, there's nothing else they could do. The money wasn't there to pay. So that sounds like an argument there was no breach of duty. But here we're talking about whether there was a duty in the first place. If there wasn't a breach of duty, why does it matter so much as to whether there was a duty? Well, if there's no duty, I don't even have to get to that question on breach. So you've jumped to an answer that suggests to me, okay, there's another defense down the road. But that doesn't answer to me the question to the first part. That is, you're telling me your clients didn't have any, there weren't any accuracy funds to pay any more than was already paid. But why isn't it appropriate for the fund to impose on your clients, who were in control of where the money went, to impose on your clients this duty to make sure what there is there should go to the funds? Now, you can tell me that there wasn't anything else there, but that gets to the existence of duty. In answering your question, I'm going to go ahead and assume that there's a duty, but I'm not conceding that there is a duty. I don't think there is. I don't think there is. Here we're trying to figure out whether there's a duty or not. And I'll assume from my question that there were assets that were paid off in other directions, and for maybe good reasons, the officers decided to pay other debts for other creditors first. What's wrong with the fund saying, look, we want to motivate you to push these to the top of the list, so we're imposing this duty on you? What's wrong with that? You can't unilaterally impose duties on people. I think your questioning of counsel earlier when you talked about how is the plan assigned fiduciary duties to people who aren't even part of or parties to a contract. ERISA doesn't do it. Well, that may get to be the question. We've had a couple of citations, and I'm still working on that question for myself. But it's not like your clients are strangers to this set of transactions. They are, in fact, the officers and the owners as well. That doesn't mean we pierce the corporate veil and so forth, but they are involved in the activity. They're not some outsider to the transaction. And as you go further in, if we went further in the analysis, first of all, I don't think the trust documents have language that impose or have the language making unpaid contributions, plan assets or attempting to. I don't think that that language is anywhere near sufficient. But, and I think this relates to your question, I think it's extremely important when you impose fiduciary obligations on somebody and are going to punish them, don't you think they ought to know that they're fiduciaries? I mean, that's a fundamental principle of law, it seems to me. Well, if plaintiff is right in the reading of ERISA that's been offered up, and I'm not saying that I've worked through that yet, but if plaintiff is right, your clients are in a position to know what the labor agreement says. Your clients are in a position, because of accuracies involvement, to know what the fund documents say, and at least one of your clients is himself a trustee apparently of at least one of the funds. So does that give at least, at least as to that fund, does he have a fiduciary obligation because he's a trustee? Well, he would have a fiduciary obligation to that fund, but I'm not sure it's the same as a trustee of the fund in the management of the fund assets. But I am not at all convinced that that means he would also be a fiduciary in his capacity as an owner of the employer with respect to unpaid contributions. But if as a trustee he's joining in the adoption of whatever language that plaintiff asserts imposes the obligation, then we're not quite in the situation of an obligation being opposed upon a stranger, because he's himself a trustee adopting the language that is arguably imposing the duty on him. As to that trust, I would agree with you if the language of the trust instrument says in specific unambiguous terms that the unpaid contribution is an asset of the plan. It isn't enough to say that a contribution, plan assets are contributions made or to be made. I mean, the case law seems to be pretty clear that that's not enough. Well, that's our question here, isn't it? I mean, isn't that our question about whether BOSS does it or doesn't or whether we're with or whether we can follow the Eleventh Circuit and ITPE or not? BOSS says it doesn't matter what's in the agreements. You can't – if it's an apple, it's an apple. You can't have two people – you can't have two people agree that somebody is a fiduciary when they're simply not a fiduciary, because the fiduciary, being a fiduciary, is a concept at law. And that concept of law is that you must control the asset under an ERISA. And just because somebody says a unpaid contribution is a plan asset doesn't all of a sudden impose liability or make you a fiduciary. You still have to control that. And I think BOSS did make a – although it's subtle, they did make a distinction between whether or not it's a plan asset, and then they went on and said even if it's a plan asset, they lack the requisite control to make them a fiduciary. So if you don't have the control, you and I can say – agree that I'm a fiduciary over your bank account. If I never have control over your bank account, I can't be a fiduciary regardless of whether you and I said so. But that's a – do you think that – where in BOSS do you think they make that as a broad legal statement as opposed to a question of fact about the particular facts there? Under Section D, I only have the Westlaw printout. They say moreover, a typical employer never has sufficient control over a plan asset to make it a fiduciary for purposes of 523. Of the bankruptcy code though, right? So when you acknowledge to Judge Gleeson earlier that maybe there's a difference and that there's a way to thread the needle, then I don't know that we can take that into ERISA. But here they are talking about the control aspect. It is later that they deal with the issue brought up by Judge Gleeson, which is the timing of the creation of the fiduciary obligation. But they do recognize the possibility of a fiduciary status under ERISA, even if not under 523.84. Fiduciary status, potentially, yes. Now – Can I ask you a question just going back to an earlier line of questions or discussion with Judge Clifton that you had? I'm trying to figure out, when you got into the discussion of whether, if there was a duty, it was breached, I think you're going beyond arguments in your brief. So I had understood your brief to be about whether there's a duty and not these facts about whether it was breached and whether there was really money. Am I right about that? Yes. I was just responding to the judge's question. So we really – you've waived any argument that as a matter of fact there was no breach. We can't decide this case on that at this point, right? Well, I don't think the judge's decision was based on that. I don't think that's even before you right now.  Now, I would – I only have 20 seconds. I got sidetracked. I don't want you to overlook, because we've been talking extensively about Boss, this, again, as a lunch-pail lawyer, I mean, Iqbal and Twombly require a pleading to set forth the adequate plausible facts that would allow for liability to be asserted here. And in my brief, I set forth four different reasons why the pleading itself was deficient. And you don't even have to get to the question of Boss. And I think you should, because it depends on who you get as a judge, how Boss is interpreted in our district, as opposed to what the law really is. But you don't ever have to get there, because in this complaint, the only basis for liability that was set forth was that the trust agreements were incorporated by reference into the master labor agreements. They were not incorporated by reference into the master labor agreements. And because they were not, and that's the only factual or legal basis that was set forth by the plaintiffs in their complaint, this complaint should have been dismissed and can be dismissed by you on that basis alone. Thank you, counsel. You're over your time. Thank you, judges. Your Honors, I'd like to start with counsel's last point. And that was that these, the master labor agreement did not incorporate by reference these trust agreements. Now, the complaint does state that the trust agreements are incorporated by reference. However, that does not mean that the master labor agreement actually has to say, these trust agreements are incorporated by reference. In fact, what it actually means is that the master labor agreement references the trust, and by operation of law, there is a trust agreement that governs that trust. And so when we look at the master labor agreement, you're actually going to see there's 16 different contribution obligations set forth in that agreement. There's varying degrees of how they reference these trust agreements. Some of them actually say it's incorporated and you're bound by it. Some of them just talk about a contribution obligation and how there's trustees that manage that fund, those kinds of things. But more importantly, the Ninth Circuit in the Miramar Hotel case actually rejected those same arguments, saying it doesn't matter if the labor agreement incorporates the trust agreement by reference. It doesn't matter if you actually even sign it. You are still bound by it. Because you are a contributing employer, you're bound by both, you take both the benefits and the burden of those agreements. Now, I think that what's really important today is that we have binding Supreme Court precedent saying that these governing documents must be enforced. We have a district court who relied upon a bankruptcy court case to say that in a purely ERISA context, there's going to be a narrow definition of fiduciary. That is contrary to binding Ninth Circuit and Supreme Court precedents. In an ERISA action, outside of bankruptcy, there's a broad definition of fiduciary. For those reasons, we're respectfully asking that the district court be reversed. Thank you, Your Honors. Thank you. Thank you both sides for the helpful argument. The case is submitted.
judges: Clifton, Friedland, Gleason